UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL BAGUER,

                             Plaintiff,

    -v-

SPANISH BROADCASTING SYSTEM, INC.,

                             Defendant.

Case No. 04-CV-8393 (KMK)

OPINION AND ORDER

Appearances:

Jerry S. Goldman, Esq.
Gina Marie Mac Neill, Esq.
Jerry S. Goldman and Associates, P.C.
New York, New York
*Counsel for Plaintiff*

William Charles Zifchak, Esq.
Neil Stuart Kaufman, Esq.
Margo Ferrandino, Esq.
Kaye Scholer, LLP
New York, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Plaintiff Michael Baguer brings this action to recover money allegedly owed to him by his former employer, Spanish Broadcasting System, Inc. ("SBS").  The First Amended Complaint, which contains thirteen causes of action, alleges that SBS breached its employment contract with Plaintiff, discriminated against him on the basis of age, race, and national origin, and violated New York labor laws by failing to pay commissions and benefits due to Plaintiff. The First Amended Complaint also contains several contract and quasi-contract claims, including claims based on quantum meruit, tortious breach of contract, promissory estoppel, and

violation of the implied covenant of good faith and fair dealing.  With this Motion, SBS moves

to dismiss the ninth (tortious breach of contract), tenth (promissory estoppel), and thirteenth

(good faith and fair dealing) causes of action.  For the reasons stated herein, the Motion is

granted in part and denied in part.

## I.  Background

The Court will accept the following facts as true for the purposes of this Motion.

Plaintiff is a fifty-five-year-old, Cuban-born, naturalized American citizen.  (Am. Compl. ¶ 15.)

SBS owns and operates approximately fifty radio stations, including two that are based in New

York City.  (*Id.* ¶ 14.)  In January of 1996, Plaintiff was hired by SBS as an at-will employee to

serve as an Account Executive, where his duties included building and maintaining relationships

with advertising clients for SBS's two New York radio stations.  (*Id.* ¶ 16.)  Plaintiff allegedly

performed well as an Account Executive, and by January 2003 Plaintiff was responsible for

accounts worth approximately $1.1 million.  (*Id.* ¶ 17.)

Plaintiff alleges that, despite his strong performance, SBS "determined that it wanted to

use younger and more 'Anglo' sales persons to directly interface with the more important

accounts."  (*Id.* ¶ 21.)  Allegedly as a result of this decision, beginning in 2003 SBS changed its

policies such that individual account executives were permitted to sell to only one New York

radio station, as opposed to both New York stations under the previous policy.  (*Id.* ¶ 22.)  In

implementing this policy change, SBS promised that all account executives would receive equal

treatment and, in particular, that Plaintiff would be provided with additional accounts in

compensation for any accounts that he lost during the transition process.  (*Id.*)  However, despite

SBS's promises, Plaintiff was not provided with accounts of similar value to those he lost, and

ultimately Plaintiff received replacement accounts valued at only approximately $350,000.  (*Id.* ¶ 23.)  Because Plaintiff's compensation was based in large part on commissions tied to the value of his accounts, his annual compensation declined by approximately $45,000 as a result of the policy change.  (*Id.* ¶ 26.)

On July 18, 2003, SBS fired Plaintiff and allegedly replaced him with a younger, American-born, non-Hispanic employee, who was less qualified than Plaintiff.  (*Id.* ¶ 28.)  At the time of Plaintiff's termination, SBS allegedly owed Plaintiff approximately $50,000 in commissions for the advertising that he had already sold to his clients.  (*Id.* ¶ 30.)  SBS has allegedly refused to pay this amount.  (*Id.* ¶ 31.)  As a result of SBS's actions, Plaintiff seeks compensatory and punitive damages.

## II.  Discussion

### A.  Standard of Review

SBS claims that general causes of action fail to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted and second alteration in original).  In *Bell Atlantic*, *id.* at 1964-69, the Supreme Court also abandoned reliance on the oft-cited line from *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]"  355 U.S. 41, 45-46 (1957).  As the Court explained, a

literal application of *Conley*'s "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Bell Atl.*, 127 S. Ct. at 1968 (alteration in original).  Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . [,]" *id.* at 1965, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" *id.* at 1969.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  If it "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

When considering a Rule 12(b)(6) motion, a court must limit itself to facts stated in the complaint, documents attached to the complaint, and documents incorporated into the complaint via reference. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (citation omitted).  The Court will accept as true Plaintiff's allegations, and draw all reasonable inferences in Plaintiff's favor. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005).  At this stage, the Court is not concerned with weighing the evidence which

4

would be presented at trial.  *See Chosun Int'l Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir. 2005).

B.  Plaintiff's Ninth Cause of Action

1.  Tortious Breach of Contract

In his ninth cause of action, Plaintiff seeks to recover compensatory and punitive damages for what the First Amended Complaint labels "Tortious Breach of Contract."  (Am. Compl. ¶¶ 95-103.)  Specifically, Plaintiff alleges that SBS terminated Plaintiff's employment for "improper motives" and that "the breach of contract was so intended and planned . . . as to cease to be a mere breach of contract and become, in association with the attendant circumstances, a tortuous [sic] and wrongful act or omission."  (*Id.* ¶ 100.)  In short, the First Amended Complaint alleges that SBS's breach of contract was so malicious as to constitute a tort.

Under New York law, absent a breach of a legal duty independent of the contract itself, a plaintiff has no cause of action in tort for a breach of contract.  *See Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 224 (S.D.N.Y. 2001) ("[A] breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").  Moreover, allegations of improper motives alone will not convert a simple breach of contract into a tortious act.  *See Merrin Jewelry Co. v. St. Paul Fire & Marine Ins. Co.*, 301 F. Supp. 479, 481 (S.D.N.Y. 1969) ("[A] claim in tort does not lie on allegations of conspiracy of a party to a contract to break it, and his consequent failure to carry

5

out the contract, in pursuance of the conspiracy, without more."); *Burlew v. Am. Mut. Ins. Co.*, 471 N.Y.S.2d 908, 912 (App. Div. 1984) ("The allegations in the complaint of malice, wantonness and grossly negligent conduct and the conclusory claims in the affidavit, which are obviously made to buttress the suit for punitive damages, cannot convert the action from one in contract to one in tort." (citation omitted)).

Plaintiff does not dispute that a cause of action in tort may not be sustained unless a defendant has violated an independent legal duty.  (Pl.'s Mem. of Law in Opp'n to the Def.'s Mot. to Dismiss 8 ("Pl.'s Mem.").)  However, Plaintiff argues that SBS in fact violated such an independent duty when it engaged in discriminatory employment practices in contravention of federal, state, and city law.  (*Id.* at 8-9 (identifying the independent legal duty as the "federal, state, and city constitutional protections, laws, rules and regulations barring the invidious discriminatory practices which the defendant allegedly engaged in").)  This argument, however, reads New York tort law too broadly.  To sustain an independent action in tort, Plaintiff must establish not merely that SBS violated *some* independent legal duty; rather, Plaintiff must establish that SBS violated a duty owed to Plaintiff *in tort*.  *See N.Y. Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (noting that the "tort" cause of action was "duplicative of the first cause of action for breach of contract" because "the use of familiar tort language in the pleading does not change the cause of action to a tort claim in the absence of an underlying *tort duty* . . . ." (emphasis added)).  Thus, a "defendant may be liable in tort when it has breached *a duty of reasonable care* distinct from its contractual obligations, or when it has engaged in *tortious conduct* separate and apart from its failure to fulfill its contractual obligations."  *Id.* at 767 (emphases added).

Here, the alleged violations of federal, state, and city anti-discrimination laws are not torts under New York law.  *See Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (noting that "discrimination claims under the [New York] Human Rights Laws" are not tort claims); *Treanor v. Metro. Transp. Auth.*, 414 F. Supp. 2d 297, 303 (S.D.N.Y. 2005) ("New York cases reason[] that a discrimination claim is not a tort because it is 'a new statutory cause of action which was not cognizable at common law.'" (quoting *Picciano v. Nassau Co. Civil Serv. Comm'n*, 736 N.Y.S.2d 55, 60 (App. Div. 2001))); *Bauman v. Garfinkle*, 652 N.Y.S.2d 32, 33 (App. Div. 1997) ("The Federal court claims for breach of contract and discrimination are not in tort."); *Lane-Weber v. Plainedge Union Free Sch. Dist.*, 624 N.Y.S.2d 185, 186 (App. Div. 1995) ("[A]n action brought pursuant to [New York's employment discrimination statute] is not a tort claim.").  Therefore, Plaintiff's reliance on SBS's alleged violation of federal, state, and city anti-discrimination laws cannot constitute the "independent legal duty" necessary to sustain his cause of action for tortious breach of contract.

Moreover, Defendant's alleged breach of contract implicates no other independent tort duty.  In determining whether a cause of action in tort may be sustained, courts applying New York law look, *inter alia*, to the type of injury allegedly caused by a defendant's actions and to the type of damages sought.  *See, e.g.*, *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992) ("In disentangling tort and contract claims, we have also considered the nature of the injury, the manner in which the injury occurred and the resulting harm." (citation omitted)); *Bellevue S. Assocs. v. HRH Constr. Corp.*, 579 N.E.2d 195, 200 (N.Y. 1991) (considering the injury and the damages sought in determining whether a claim is actionable in tort).  Where, as here, "plaintiff is essentially seeking enforcement of the bargain, the action should proceed under

7

a contract theory."[1]  *Sommer*, 593 N.E.2d at 1369 (citations omitted); *see also Bellevue*, 579

N.E.2d at 200 (finding no cause of action in tort where the "injury . . . was not personal injury or

property damage" but "simply a case of economic disappointment").  Moreover, the New York

Court of Appeals has unequivocally held that there is no independent cause of action in tort for

wrongful discharge of an employee.  *See Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 87

(N.Y. 1983) ("This court has not and does not now recognize a cause of action in tort for abusive

or wrongful discharge of an employee; such recognition must await action of the Legislature.").

Accordingly, because Plaintiff is unable to identify any legal duty in tort that SBS

violated when it discharged Plaintiff and because, absent such a violation, "[t]here is no such

thing as a tortious breach of contract under New York law," *Onanuga v. Pfizer, Inc.*, No. 03 Civ.

5405, 2003 WL 22670842, at *3 (S.D.N.Y. Nov. 7, 2003), the Court will dismiss Plaintiff's

ninth cause of action for failure to state a claim upon which relief can be granted.

### 2.  Plaintiff's Request to Amend

As an alternative, Plaintiff seeks leave to amend his sixth cause of action, for ordinary

breach of contract, to include a claim for punitive damages.  (Pl.'s Mem. 11-12.)  Under New

York law, to obtain punitive damages in an action for breach of contract:  "(1) defendant's

conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an]

egregious nature . . . ; (3) the egregious conduct must be directed to plaintiff; and (4) it must be

part of a pattern directed at the public generally."  *N.Y. Univ.*, 662 N.E.2d at 767 (citations

omitted); *accord Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003).  As noted, Plaintiff has

---

[1] With this cause of action, Plaintiff admittedly seeks no compensation for personal injury or property damage, but instead claims to have suffered contract-related "economic damages . . . including . . . back pay, back benefits, future earnings and future benefits."  (Am. Compl. ¶ 102.)

not pled facts sufficient to establish that SBS's conduct with respect to the alleged breach of contract was "actionable as an independent tort," and thus Plaintiff fails to meet even the first prong of this test.  Plaintiff also has failed to allege that SBS's conduct was directed at the public generally (and has not suggested in his brief that he could make such an allegation), and therefore his punitive damages amendment fails on this ground as well.  Furthermore, although Plaintiff declares in his opposition brief that SBS's alleged discriminatory actions were "tortuous [sic] in nature," he does not identify any additional facts that might be included in a second amended complaint that would support this position.  Accordingly, as Plaintiff has provided no reason to suggest that his proposed amendment would withstand a renewed motion to dismiss, the Court finds it unnecessary to further delay this litigation with an additional amended complaint.  *See Hall v. United Techs., Corp.*, 872 F. Supp. 1094, 1100 (D. Conn. 1995) ("The decision whether to grant leave to amend is within the court's sound discretion . . . .").

### C.  Plaintiff's Tenth Cause of Action

#### 1.  Promissory Estoppel

Plaintiff's tenth cause of action is based in promissory estoppel.  Plaintiff alleges that SBS promised to pay Plaintiff commissions and benefits and to reassign and reallocate advertising accounts to Plaintiff.  (Am. Compl. ¶¶ 106-07.)  Plaintiff further claims that he "reasonably relied upon [these promises], by staying" at his employment with SBS (Pl.'s Mem. 16), and that consequently he "suffered substantial economic damages" when SBS reneged on these promises and terminated Plaintiff "based upon a discriminatory basis."  (Am. Compl. ¶¶ 106-11.)  As a result, Plaintiff seeks both compensatory and punitive damages.

"'A cause of action for promissory estoppel under New York law requires the plaintiff to

prove three elements:  1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance.'" *Fontana v. Potter*, No. 01 Civ. 7002, 2005 WL 2039194, at *6 (E.D.N.Y. Aug. 24, 2005) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)); *accord Rogers v. Town of Islip*, 646 N.Y.S.2d 158, 158 (App. Div. 1996).  However, several courts within the Second Circuit have held that "New York does not recognize promissory estoppel as a valid cause of action in the employment context." *Fontana*, 2005 WL 2039194, at *7 (quotations omitted); *see also Weinberg v. Mizuho Capital Mkts. Corp.*, No. 03 Civ. 2612, 2003 WL 22462022, at *7 (S.D.N.Y. Oct. 30, 2003) ("New York does not recognize promissory estoppel as a valid cause of action when raised in the employment context." (quotations omitted)); *Deutsch v. Kroll Assoc.*, No. 02 Civ. 2892, 2003 WL 22203740, at *3 (S.D.N.Y. Sept. 23, 2003) ("New York law, which here governs, does not recognize promissory estoppel in the employment context."); *Miller v. Citicorp*, No. 95 Civ. 9728, 1997 WL 96569, at *10 (S.D.N.Y. Mar. 4, 1997) ("New York does not recognize promissory estoppel as a valid cause of action in the employment context.").

While this Court is aware of no New York State case that has similarly adopted a categorical rejection of promissory estoppel in the employment context, several New York courts have held that changing, or failing to change, one's employment is insufficient to establish the injury requisite to a promissory estoppel claim, "unless the plaintiff's rights under the previous situation, or missed opportunity, were so valuable that injury of unconscionable proportions would flow from the failure to enforce the oral contract." *Cunnison v. Richardson Greenshields Sec.*, 485 N.Y.S.2d 272, 276 (App. Div. 1985) ("[I]t has been consistently held that a change of job or residence, by itself, is insufficient to trigger invocation of the promissory

estoppel doctrine."); *see also Stillman v. Townsend*, No. 05 Civ. 6612, 2006 WL 2067035, at *5 (S.D.N.Y. July 26, 2006) ("It is well-settled that change of job or residence, by itself, is insufficient to trigger invocation of the promissory estoppel doctrine." (quotations omitted)); *Dalton v. Union Bank of Switz.*, 520 N.Y.S.2d 764, 766 (App. Div. 1987) ("[A] change of job, even with increased emoluments and advanced status, is not sufficient to call promissory estoppel into play." (quotations omitted)); *Swerdloff v. Mobil Oil Corp.*, 427 N.Y.S.2d 266, 270 (App. Div. 1980) ("A change of job or residence (and, a fortiori, the failure to make such change), by itself, is not sufficient to call promissory estoppel into play . . . .").  Such a rule is consistent with New York's restrictive approach to promissory estoppel, which reserves the doctrine only "for a limited class of cases based on unusual circumstances."  *Tribune Printing Co. v. 263 Ninth Ave. Realty, Inc.*, 452 N.Y.S.2d 590, 593 (App. Div. 1982); *accord Miller*, 1997 WL 96569, at *10 (citing *Tribune Printing*).

Here, the only injury that Plaintiff claims to have suffered as a result of his reliance on SBS's alleged promises was his failure to "leave the employer and seek a better deal elsewhere." (*See* Pl.'s Mem. 16.)  But as discussed above, even assuming, contrary to the clear weight of the authority in this district, that promissory estoppel is applicable in the employment context, Plaintiff's failure to change his employment is insufficient to trigger promissory estoppel under New York law without a further claim that the missed opportunity caused injury of "unconscionable proportions."  Plaintiff makes no such claim here, and therefore, without more, Plaintiff cannot survive SBS's motion to dismiss his promissory estoppel claim.

Perhaps recognizing this, Plaintiff points the Court to cases that he interprets as using "a classic promissory estoppel analysis to describe how a plaintiff might sustain a claim for

severance in the absence of a written promise." (Pl.'s Mem. 13.) The earliest of these cases is

*Smith v. N.Y. State Elec. & Gas Corp.*, 548 N.Y.S.2d 117 (App. Div. 1989). In *Smith*, the Third

Department held that, to survive summary judgment on a claim for severance payments,

"plaintiff was required to come forward with evidence of (1) a regular practice by defendant to

make severance payments, and (2) his reliance on that practice in accepting or continuing his

employment." *Id.* at 118 (citations omitted). The *Smith* analysis was again applied to claims for

severance payments in *Deutsch*, 2003 WL 22203740, at *3-4, and in *Hirschfeld v. Institutional

Investor, Inc.*, 617 N.Y.S.2d 11, 12 (App. Div. 1994). In Plaintiff's view, "*Smith*, *Hirschfeld*,

and *Deutsch* stand for the proposition that, while an employer may terminate [an employee] 'at

will,' an employer may not deny the employee the wages and other benefits to which he was

entitled for the term of his employment, and the existence and amount of those benefits may be

determined, where necessary, by reference to the doctrine of promissory estoppel." (Pl.'s Mem.

14.)

  Contrary to Plaintiff's claims, however, *Smith* and its progeny are not promissory

estoppel cases. Although the test set forth in *Smith* lists "reliance" as one of its two factors, it

differs from the well-established three-prong promissory estoppel test used in New York, as it

requires neither a clear and unambiguous promise nor an injury stemming from reliance on that

promise. *See Kaye*, 202 F.3d at 615 (listing the "three elements" of a promissory estoppel claim

under New York law). This distinction is perhaps clearest in the cases that address both

promissory estoppel claims and other claims under *Smith*. For example, in *Deutsch* and *Graff v.

Enodis Corp.*, No. 02 Civ. 5922, 2003 WL 1702026 (S.D.N.Y. Mar. 28, 2003), the courts treated

as separate the plaintiffs' promissory estoppel claims and their claims based on *Smith*, rejecting

the plaintiffs' *Smith* claims only after independently rejecting distinct promissory estoppel

claims as inapplicable in the employment context.  *See Deutsch*, 2003 WL 22203740, at *3-4;

*Graff*, 2003 WL 1702026, at *2-3.  Moreover, in *Smith* itself, the court characterized the test that

it set forth as one for breach of contract, not promissory estoppel.  548 N.Y.S.2d at 118 ("[T]he

contract which plaintiff claims defendant breached was not supported by consideration and is,

accordingly, unenforceable as a matter of law." (citations omitted)); *see also Hirschfeld*, 617

N.Y.S.2d at 12 (summarily applying *Smith* analysis).  In fact, the Court is aware of no case that

applies the *Smith* analysis to a promissory estoppel claim, rather than to a claim for breach of

contract.  Accordingly, Plaintiff's reliance on *Smith* to establish that promissory estoppel is

applicable in the employment context fails.

      Instead of an alternative analysis by which to assess promissory estoppel claims, New

York courts apply the test set forth in *Smith* only to employees' claims for severance payments

and only when such claims are based upon a regular practice by their employers to issue such

payments.  *See, e.g., Deutsch*, 2003 WL 22203740, at *3-4 (applying *Smith* test to "Deutsch's

severance claims" based on "breach of an oral contract"); *Graff*, 2003 WL 1702026, at *3

(applying *Smith* to plaintiff's "claim for severance pay"); *Hirschfeld*, 617 N.Y.S.2d at 12

(applying test to "plaintiff's claim for severance benefits").  Thus, even if the Amended

Complaint were to satisfy the *Smith* test, Plaintiff would be eligible only to receive severance

payments, not the "back pay, back benefits, future earnings and future benefits" (Am. Compl. ¶

111) that he seeks with his tenth cause of action.  Furthermore, because Plaintiff has not pled "a

regular practice by [SBS] to make severance payments," *Smith*, 548 N.Y.S.2d at 118, his claim

fails even under *Smith*.  Accordingly, Plaintiff's tenth cause of action fails to state a claim upon

which relief can be granted.

### 2.  Plaintiff's Request to Amend

As with his ninth cause of action, Plaintiff again seeks leave to amend his Complaint in
the event the Court dismisses Count Ten.  (Pl.'s Mem. 17-18.)  But, here too, Plaintiff has
provided no reason to believe that an amendment would cure the defects found in this count.
Plaintiff's promissory estoppel claim fails because he does not plead an injury that is cognizable
under New York's limited promissory estoppel doctrine.  A curative amendment would therefore
need to plead an "injury of unconscionable proportions."  *Cunnison*, 485 N.Y.S.2d at 276.
Plaintiff's proposed amendment – that he "relied on the defendant's statements and . . .
'reasonably expected' that the accounts would be properly reallocated" (Pl.'s Mem. 18) – does
not plead an unconscionable injury and therefore does not save this cause of action.
Accordingly, Plaintiff's request to amend his tenth cause of action is denied.

### D.  Plaintiff's Thirteenth Cause of Action

With his thirteenth cause of action, Plaintiff alleges that SBS breached its implied duty of
good faith and fair dealing under the employment contract when it failed to pay him
commissions for the sales that he executed prior to his termination, and when it unfairly
reallocated his accounts.  (Am. Compl. ¶ 128.)  "In New York, all contracts imply a covenant of
good faith and fair dealing in the course of performance."  *511 W. 232nd Owners Corp v.*
*Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002) (citations omitted).  This covenant is
breached "when a party acts in a manner that, although not expressly forbidden by any
contractual provision, would deprive the other party of the right to receive the benefits under
their agreement."  *O'Neill v. Warburg, Pincus & Co.*, 833 N.Y.S.2d 461, 463 (App. Div. 2007)

14

(internal quotations and citations omitted); *accord Jaffe v. Paramount Commc'ns Inc.*, 644

N.Y.S.2d 43, 47 (App. Div. 1996).  To prevail on such a claim, a plaintiff must establish that the

defendant violated an implied term "*apart from the terms of the contract*" itself.  *Brooks v. Key*

*Trust Co. Nat'l Assoc.*, 809 N.Y.S.2d 270, 272 (App. Div. 2006) (internal quotations omitted).  If

the alleged violation cannot be distinguished from the explicit contractual obligations, then the

claim is "properly dismissed as duplicative" of the underlying contract claim.  *Id.*

Addressing the implied covenant of good faith and fair dealing, the New York Court of

Appeals has held repeatedly that "'[n]o obligation can be implied . . . which would be

inconsistent with other terms of the contractual relationship.'"  *Horn v. N.Y. Times*, 790 N.E.2d

753, 756 (N.Y. 2003) (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y.

1983)).  Accordingly, a "defendant does not breach its duty of good faith and fair dealing by

exercising its rights under the contract[] . . . ."  *DCMR v. Trident Precision Mfg.*, 317 F. Supp. 2d

220, 226 (W.D.N.Y. 2004) (internal quotations omitted).  In the context of an at-will

employment contract, this means that "it would be incongruous to say that an inference may be

drawn that the employer impliedly agreed to a provision which would be destructive of his right

of termination."  *Murphy*, 448 N.E.2d at 91.

Consistent with this policy, the New York Court of Appeals has regularly declined to

alter at-will employment relationships through the imposition of implied contractual terms.  *See*

*Horn*, 790 N.E.2d at 759 ("The only exceptions to the employment-at-will rule ever adopted by

this Court have involved very specific substitutes for a written employment contract . . . .  We

have consistently declined to . . . recognize a covenant of good faith and fair dealing to imply

terms grounded in a conception of public policy into employment contracts . . . .").  *But see*

*Wieder v. Skala*, 609 N.E.2d 105, 109 (N.Y. 1992) (applying covenant of good faith and fair

dealing in the limited circumstances where the "unique characteristics of the legal profession . . .

make the relationship of an associate to a law firm employer intrinsically different from that of

. . . financial managers to . . . corporate employers . . . .").  For example, the Court of Appeals

has rejected claims of implied contractual terms where a plaintiff was discharged for "refus[ing]

to participate in certain illegal activities," *Sabetay v. Sterling Drug, Inc.*, 506 N.E.2d 919, 920

(N.Y. 1987), where a plaintiff was discharged as the result of age discrimination, *see Murphy*,

448 N.E.2d at 87, and where a plaintiff was discharged so that defendant corporation could avoid

paying a higher stock buy-back price for shares of its securities, *see Gallagher v. Lambert*, 549

N.E.2d 136, 136 (N.Y. 1989).

      *Gallagher* is particularly relevant here.  In *Gallagher*, the plaintiff alleged that

"defendants fired him for the sole purpose of recapturing his shares at an unfairly low price and

redistributing them among themselves."  549 N.E.2d at 140 (Kaye, J., dissenting).  The plaintiff

did not seek compensation for his improper termination; rather, he sought "the higher repurchase

price" that he would have been entitled to under his employment contract had he been fired on

January 31, 1985, instead of on January 10, 1985.  *Id.* at 136.  The trial court denied summary

judgment on the grounds that "factual issues were raised relating to defendants' motive in firing

plaintiff."  *Id.* at 137.  The Court of Appeals, however, refused to consider defendants' motive

for the firing.  Noting that the plaintiff was "at all times an employee at will," *id.* at 136, the

Court of Appeals rejected plaintiff's claim, reasoning that any other holding would "frustrate"

the employer's "unfettered discretion to fire plaintiff at any time."  *Id.* at 138.

      Thus, there is a clear line of cases in New York upholding a strict reading of an

employer's right to terminate an at-will employee, even for allegedly "improper" motives.  In the Southern District, however, this line of precedent is complicated by the Second Circuit's twenty-two-year-old holding in *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109 (2d Cir. 1985).  In *Wakefield*, which preceded the New York Court of Appeals' decision in *Gallagher*, the plaintiff salesman claimed that the defendant breached the implied covenant of good faith in the employment contract when the defendant discharged him "in order to avoid paying him commissions on sales that were completed but for formalities." *Id.* at 112.  The *Wakefield* court, applying New York law as it stood in 1985, held that plaintiff would prevail on his implied contract claim if he could prove that defendant's "desire to avoid paying him commissions that were virtually certain to become vested was a substantial motivating factor in the decision to discharge him." *Id.* at 114.  However, if "the discharge was otherwise motivated, he [would] not recover on the good faith theory." *Id.*  The court reached this conclusion despite a provision in the employment contract explicitly stating that no incentive compensation would be paid unless plaintiff were employed "on the date the incentive compensation is to be paid pursuant to the [contract]." *Id.* at 111.

Because *Wakefield* preceded *Gallagher*, it is unclear whether *Wakefield* remains good law.  A few courts in this District have tried to reconcile the two decisions, reaching varying conclusions.  *Compare Plantier v. Cordiant plc*, No. 97 Civ. 8696, 1998 WL 661474, at *3 (S.D.N.Y. Sept. 24, 1998) (distinguishing *Wakefield* from *Gallagher*), *and Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 239 (S.D.N.Y. 1992) (distinguishing *Wakefield* from *Gallagher*, and holding that *Wakefield* is still good law), *with Butler v. Cadbury Beverages, Inc.*, No. 3:97-CV-2241, 1999 WL 464527, at *4 n.2 (D. Conn. June 30, 1999) ("[N]ot[ing] that the

validity of *Wakefield* . . . has been called into question."), *and Collins & Aikman Floor Coverings Corp. V. Froehlich*, 736 F. Supp. 480, 486 (S.D.N.Y. 1990) (reading *Gallagher* to mean that "[r]eliance upon *Wakefield* turned out to be in error under New York law").

In distinguishing *Wakefield* from *Gallagher*, the *Plantier* and *Knudsen* courts found that when the plaintiff in *Gallagher* was terminated, he had not yet earned the higher stock price that he sought; whereas, according to their reading, the plaintiff in *Wakefield* had already earned his sales commission by the time that he was dismissed from his employment. *See Plantier*, 1998 WL 661474, at *3; *Knudsen*, 792 F. Supp. at 239.  In the view of this Court, however, this distinction fails to take into account a key fact in *Wakefield*:  namely, that at the time of his termination, the plaintiff in *Wakefield* was not yet contractually entitled to his sales commission. Instead, pursuant to an express provision in his employment contract, his commissions did not vest until the date that they were scheduled to be paid:  "In order to receive incentive compensation under this Plan, the participant must be a[n] . . . employee on the date the incentive compensation is to be paid pursuant to the Plan." *Wakefield*, 769 F.2d at 111.  Faced with this contract provision, the *Wakefield* court permitted recovery not because the plaintiff had already earned his commissions, but because defendant's *motives* in firing plaintiff were improper. *Id.* at 113.  The *Wakefield* court's focus on the employer's motives is confirmed by its explicit holding that the plaintiff would not be permitted to recover under the covenant of good faith and fair dealing if a jury determined that he was fired for an innocuous reason – or, indeed, even for a "mistaken or arbitrary" reason – rather than in an attempt to avoid payment of the sales commissions. *Id.*  Yet, it is precisely the consideration of the employer's motives that later was rejected by the New York Court of Appeals in *Gallagher*. *See Gallagher*, 549 N.E.2d at 137

(reversing district court's holding that summary judgment was inappropriate because "factual issues were raised relating to defendants' motive in firing plaintiff"). Given these seemingly incompatible holdings, it may be that "[r]eliance upon *Wakefield* turned out to be in error under New York law." *Collins & Aikman*, 736 F. Supp. at 486.

This does not end the inquiry, however. For even if *Wakefield* does not survive the Court of Appeals' decision in *Gallagher*, the present case differs from *Gallagher* with respect to a key issue. Like *Wakefield*, *Gallagher* involved an express contractual provision which limited the employee's ability to receive certain compensation in the event of his termination. Here, however, no such provision governs the employment contract. This difference is clearly material, as under New York law, an implied contractual term cannot conflict with an express term. *See Horn*, 790 N.E.2d at 756 ("No obligation can be implied . . . which would be inconsistent with other terms of the contractual relationship."). Indeed, in *Gallagher*, the court focused on the express provision in the contract, reasoning that a rule that strictly applied express contractual terms better enabled the parties to define their rights through contract. *See* 549 N.E.2d at 138 ("[Ignoring an express term] would frustrate the agreement and would be disruptive of the settled principles governing like agreements where parties contract between themselves in advance so that there may be reliance, predictability and definitiveness between themselves on such matters."). Here, because Plaintiff's employment contract contains no provision conditioning his ability to collect commissions on his employment status at a certain date, his claim will not be dismissed on this ground.

Moreover, Defendant gains no cover from the fact that Plaintiff was an "at-will" employee. This is not a claim for wrongful termination; rather, Plaintiff claims that SBS

19

implicitly violated the employment contract when it failed to pay him commissions for the sales that he executed before termination by SBS.  The implied term sought by Plaintiff – that his commissions vested at the point that he made the relevant sales – is entirely compatible with at-will employment, just as a salaried at-will employee who is fired before being paid may be compensated for the work done since his last paycheck.  *See Sipkin v. MLB Advance Media*, 808 N.Y.S.2d 920, 920 (App. Div. 2005) (per curiam) (finding that at-will employee was entitled to "earned" compensation, even though he had been terminated prior to receiving payment).  Moreover, because Plaintiff's compensation largely consisted of these incentive-based commissions, failure to honor the implied term sought by Plaintiff would "deprive [Plaintiff] of the right to receive the benefits under the[] [employment] agreement."  *O'Neill*, 833 N.Y.S.2d at 463 (quotations omitted).  Accordingly, the Court will not dismiss Plaintiff's claim for commissions based on the implied covenant of good faith and fair dealing.

However, the second part of Plaintiff's good faith and fair dealing claim, which is premised on SBS's reallocation of Plaintiff's accounts, fails to state a claim upon which relief can be granted.  Unlike Plaintiff's claim for commissions earned, on this issue, Plaintiff's at-will employment status is a bar to recovery.  Under the employment contract, SBS had the authority to terminate Plaintiff's employment at any time and for any reason.  Possessed of this greater power to terminate the contract, SBS also had the authority to reallocate Plaintiff's accounts.  *See Danzig v. Dikman*, 434 N.Y.S.2d 217, 219 (App. Div. 1980) ("The power to modify [a contract] is implicit from the power to terminate, in that the effect of a modification is the production of a new contract.").  As such, an implied term prohibiting SBS from reallocating Plaintiff's accounts would be "inconsistent with other terms of the contractual relationship,"

*Horn*, 790 N.E.2d at 756, namely, the at-will employment provision.  Moreover, even absent

Plaintiff's at-will employment status, Plaintiff has failed to establish that reallocation of his

accounts "would deprive [him] of the right to receive the benefits under [the employment]

agreement."  *O'Neill*, 833 N.Y.S.2d at 463.  Assuming that Plaintiff was fully compensated for

the advertising revenue that he generated – or, to the extent that he was not, he seeks redress

elsewhere in his Complaint – SBS's alleged reallocation of Plaintiff's accounts does not "prevent

performance of the contract or to withhold its benefits [Plaintiff's compensation] from the

plaintiff."  *Aventine Inv. Mgmt., Inc. v. Can. Imperial Bank of Commerce*, 697 N.Y.S.2d 128,

130 (App. Div. 1999).  The Court therefore will not imply a contract term prohibiting the

reallocation of Plaintiff's accounts and SBS's Motion to Dismiss this aspect of Plaintiff's

thirteenth cause of action is granted.[2]

---

[2]Plaintiff also alleges that the reallocation of his accounts was "carried out in contravention of the agreements and understandings reached with plaintiff and in contravention of the representations made by the defendant."  (Am. Compl. ¶ 79.)  To the extent that Plaintiff claims that the account reallocation violated such express agreements, he has preserved that claim in his breach of contract cause of action, which is not challenged in this Motion to Dismiss.

III.  Conclusion

For the reasons stated herein, SBS's Motion to Dismiss Plaintiff's ninth and tenth causes of action is granted.  SBS's Motion to Dismiss Plaintiff's thirteenth cause of action is granted with respect to the reallocation of Plaintiff's accounts and denied with respect to Plaintiff's claim for commissions.  The Clerk of the Court is directed to terminate the Motion (Docket Nos. 8, 17).

SO ORDERED.

Dated:          September 20 , 2007
                New York, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

22